UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL THOMAS,

Plaintiff,

v.

MANHAS, *et al.*,

Defendants.

Case No. 1:25-cv-00776-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S FIRST AMENDED COMPLAINT BE DISMISSED

(ECF No. 16)

OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS

ORDER GRANTING PLAINTIFF'S MOTION FOR 7-10 DAY EXTENSION OF TIME TO FILE A FIRST AMENDED COMPLAINT; AND PLAINTIFF'S MOTION TO EXCUSE LATE FILING OF FIRST AMENDED COMPLAINT

(ECF No. 17, 18)

ORDER DENYING PLAINTIFF'S REQUEST FOR LEAVE TO SUPPLEMENT RECORD WITHIN 5-7 DAYS.

(ECF No. 19)

ORDER DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE

Plaintiff Michael Thomas is a state prisoner proceeding *pro se* in this civil rights action filed under 42 U.S.C. § 1983. (ECF No. 1). Plaintiff filed his complaint commencing this action on June 16, 2025 (ECF No. 1), alleging that four medical professionals at Kern Valley State

Prison suppressed or misrepresented medical information about his medical condition over several years.

On December 5, 2025, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 6). The Court gave Plaintiff thirty days to file a first amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 8). The Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.* at 9).

Plaintiff filed a first amended complaint on July 6, 2026. (ECF No. 16). In his First Amended Complaint, Plaintiff reasserts the same allegations of deliberate indifference to serious medical needs alleged in his initial complaint.

Plaintiff also filed several motions asking that the Court consider his First Amended Complaint despite being filed after the deadline. (ECF No. 17, 18, and 19).

Because the Court will screen Plaintiff's first amended complaint, the Court will grant Plaintiff's motions for extensions of time to file the first amended complaint (ECF No. 17, 18). It will deny Plaintiff's motion to supplement the record, which asks for an opportunity to support his motions with additional evidence (ECF No. 19).

The Court has also screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claims. For the reasons set forth below, the Court recommends that this case be dismissed with prejudice.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT[1]

Plaintiff filed his complaint on July 6, 2026. (ECF No. 16).

The Court now summarizes Plaintiff's first amended complaint. Plaintiff's first amended complaint names the following defendants: Vishal Manhas, physician's assistant at Kern Valley State Prison; Jenny Hwang, physician at Kern Valley State Prison; Andrew Zepp, physician and surgeon at Kern Valley State Prison; and Saman Samadani, physician at Kern Valley State Prison.

Plaintiff's amended complaint consists of a chronological narrative of events taking place from 2021 to 2023. (ECF No. 16 at 9-14). Plaintiff opens his amended complaint with the following description of his ongoing medical issues and current requests for treatment:

> Plaintiff's serious medical need is a progressive, severe spinal condition consisting of four herniated lumbar discs, five herniated cervical discs, severe lumbar stenosis, moderate cervical stenosis, nerve root compression, thecal sac compression, and multilevel lumbar radiculopathy, as confirmed by MRI imaging dated 3/16/21 and EMG testing dated 3/8/21. These conditions cause Plaintiff chronic and acute pain, numbness, tingling, weakness, seizing, and recurring debilitating spasms. Multiple neurosurgeons, specifically Dr. Weibe, Dr. Segal, and Dr. Rahimifar recommended surgery, specifically, a decompressive laminectomy with possible fusion, on multiple occasions beginning in 2014. This condition, if left untreated, causes significant injury and the unnecessary and wanton infliction of pain.

---

[1] For readability, minor alterations, like changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

> The specific treatment Plaintiff required but was denied is (a) referral to neurosurgeon with accurate and complete 2021 MRI and EMG imaging results; (b) evaluation for and performance of a decompressive laminectomy with possible spinal fusion; and (c) accurate diagnosis and treatment of his cervical spinal condition, including the five cervical disc herniations confirmed by the March 2021 MRI.

(*Id.* at 9).

Plaintiff's amended complaint then recounts numerous interactions with various medical professionals over several years. Specifically, Plaintiff alleges that on February 18, 2021, he was examined by a neurosurgeon, Dr. Rahimifar, where it was noted that Plaintiff's hands twitched whenever his ankles were manipulated. Plaintiff alleges Dr. Rahimifar ordered a cervical MRI, a lumbar MRI, and an EMG. (ECF No. 16 at 9). On March 8, 2021, Plaintiff underwent an EMG, which revealed an abnormal reading and a multilevel lumbar radiculopathy. On March 16, 2021, Plaintiff completed an MRI of his lumbar and cervical regions, which revealed multiple "broad" disc bulges in his lumbar, severe lumbar stenosis, five cervical disc bulges, and moderate cervical stenosis. (*Id.* at 10).

On March 26, 2021, Defendant Manhas stated Plaintiff's MRIs were "completely normal" and Plaintiff's condition had been "completely healed." Plaintiff states Defendant Manhas refused to allow Plaintiff to read his results or provide him with copies. In his progress notes, Plaintiff alleges that Defendant Manhas omitted Plaintiff's 2021 imaging results from his medical file and only noted Plaintiff's 2019 imaging results.

Plaintiff claims that Dr. Rahimifar requested these 2021 imaging results from Manhas, but Dr. Rahimifar was unable to review the results.

Plaintiff states his SMART Committee review for surgery was denied because imaging demonstrated no nerve root compression because of false information provided by Manhas. Plaintiff claims the SMART Committee stated the findings on his imaging were mild, while Plaintiff alleges the findings were severe.

On October 27, 2022, Plaintiff had a tele-med appointment with Defendant Hwang, who dismissed any suggestion of relatedness between his hand numbness and lumbar or cervical issues. However, Plaintiff alleges in communications with a Dr. Jeffrey Ries, Hwang

communicated that issues with his hand numbness might be related to cervical spine. (*Id.* at 11.)

Plaintiff was examined by Dr. Daniel Hawkins at UC San Diego Medical Center on April 13, 2023. (*Id.* at 11). Plaintiff states that Dr. Hawkins claimed Plaintiff's upper extremity symptoms would be caused by cervical issues, but Plaintiff had no record of cervical injuries. Dr. Hawkins' report indicates he did not receive the 2021 lumbar or cervical imaging results. Plaintiff alleges that Defendant Hwang only included his 2019 MRI and did not provide the 2021 MRI.

Plaintiff was examined by Defendant Zepp on June 15, 2023. Plaintiff alleges that as he entered the medical clinic, his left leg was shaking, and Defendant Zepp dismissed the leg shaking as faking. (*Id.*). Plaintiff alleges that Defendant Zepp acknowledged that KSVP only provided Dr. Hawkins with Plaintiff's 2019 MRI and not the 2021 MRI, and if Dr. Hawkins had been provided with the 2021 MRI, the progression of his injury would have been demonstrated (*Id.*).

Plaintiff met with Defendant Samadani on June 1, 2023 and dismissed Plaintiff's claims that his results were withheld from neurologists. (*Id.* at 12). Defendant Samadani referred Plaintiff to Physical Medicine and Rehabilitation (PM&R), a program that would provide therapy, injections and various pain management measures. (*Id.*). Plaintiff claims PM&R was a "vehicle for the mental health program." (*Id.*).

In his second claim of deliberate indifference, Plaintiff alleges Defendants falsely labeled him as a drug addict and mental health patient and "coerced him into mental health programs to circumvent his need for surgery." Plaintiff claims that following his SMART committee denial, Manhas forced Plaintiff into CTEC by stating it was a procedure above SMART. Additionally, Plaintiff stated Manhas falsely claimed that Plaintiff was suffering from anxiety related to his pain. (*Id.* at 13).

On June 28, 2022, Plaintiff alleges Defendant Hwang referred Plaintiff to mental health after falsely stating he had been noncompliant with his medications and treatment options. Plaintiff claims he was never noncompliant and that the medications Defendants had ordered

were never conveyed to staff to make it seem as if Plaintiff was indeed noncompliant. (*Id.*). Plaintiff alleged that between July 2022 and October 2023, there were attempts to admit him to various suboxone programs, used to ween individuals off opioids, even though Plaintiff denied the usage of such substances and had "no history of substance abuse. (*Id.* at 14).

Plaintiff seeks compensatory and punitive damages against each defendant. (*Id.* at 16).

## III. PLAINTIFF'S MOTIONS FOR EXTENSIONS OF TIME TO FILE A FIRST AMENDED COMPLAINT

Also on July 6, 2026, and July 7, 2026, Plaintiff filed three separate documents: (1) Motion for 7-10 day extension of time to file a First Amended Complaint; (2) Motion to Excuse Late Filing of First Amended Complaint, Request for Nun Pro Tunc Relief, and Motion of Extension of Time to File First Amended Complaint; and (3) Request for Leave to Supplement Record within 5-7 days. (ECF Nos. 17, 18, 19). The Court summarizes these documents as follows.

In his motion for an extension of time to file a first amended complaint, Plaintiff indicates that at the time he drafted this motion, he had "prepared a rough draft of his FAC and is ready to file it. However, Plaintiff requires a brief additional period of time to transcribe the FAC into proper format and legible handwriting for submission to the Court." (ECF No. 17 at 1). Plaintiff further states that FCI Lompoc lacks ADA accommodations and as he suffers from various physical ailments, his pain and other symptoms prevented him from timely drafting and filing his first amended complaint. (*Id.* at 1-2).

Next, Plaintiff's Motion to Excuse Late Filing of First Amended Complaint, Request for Nun Pro Tunc Relief, and Motion of Extension of Time to File First Amended Complaint states Plaintiff did not receive a prior Court order granting Plaintiff a *sua sponte* extension to file a first amended complaint or to notify the court he wishes to stand on his original complaint (ECF No. 15) until one day after the expiration of the extension. (ECF No. 18 at 1). Plaintiff claims that FCI Lompoc officials "have been systematically and actively obstructing Plaintiff from sending and receiving legal mail since his 3/2/26 arrival" and "this obstruction directly caused Plaintiff to receive this Court's 6/3/26 order on 6/18/2026…." (*Id.* at 1-2). Plaintiff then

recounts these alleged obstructions. Plaintiff recites his physical ailments and how these ailments rendered him unable to timely respond to the Court's screening order, pending since December 5, 2025. (*Id.* at 2.) Plaintiff then requests the Court excuse the late filing and grant nunc proc tunc relief. (*Id.* at 4).

Finally, Plaintiff's request for leave to supplement the record within 5-7 days, (ECF No. 19), states this filing will support his motion to excuse the late filing of his first amended complaint, by attaching numerous exhibits. Plaintiff lists the exhibits as follows: a running email exchange between Plaintiff an attorney Shefter; a declaration of attorney Shefter supporting the referenced motions; and a signed acknowledgment by prison staff confirming that Plaintiff received the Court's order one day late. (*Id.*). However, Plaintiff does not provide the exhibits.

The Court will GRANT Plaintiff's motions for extensions of time (ECF No. 17, and 18) to the extent it will screen Plaintiff's First Amended Complaint despite it being submitted after the deadline. Moreover, the Court will DENY Plaintiff's motion to supplement the record, (ECF No. 19) because no further evidence is required in support of Plaintiff's motions for extensions of time.

## IV. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see*

*also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

**A. Lack of a Plain and Short Statement**

Plaintiff's first amended complaint is subject to dismissal because it lacks a short and plain statement of the claim, as required by Rule 8 of the Federal Rules of Civil Procedure.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting

this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). The complaint must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in deprivation of his rights. *Iqbal*, 556 U.S. at 676-77.

> Additionally, a complaint should not be pled in a "shotgun" manner, which occurs when a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count ... prevent[ing] the opposing party from reasonably being able to prepare a response or simply mak[ing] the burden of doing so more difficult.

5A *Wright & Miller's Federal Practice and Procedure* § 1326 (4th ed. 2024). The Ninth Circuit has recently explained that "district courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Gibson v. City of Portland* 165 F.4th 1265, 1289 (9th Cir. 2026).

With these standards in mind, Plaintiff's first amended complaint demonstrates the hallmarks of a shotgun pleading, which violates Rule 8.

Plaintiff's first amended complaint does not contain a statement of facts. Instead, it contains two claims, each of which is followed by a chronological narrative of events over time. Plaintiff labels his first claim as follows: "Defendants Manhas, Hwang, Zepp, and Samani were Deliberately Indifferent When They Systematically Suppressed Plaintiff's 2021 MRI Results and Denied Him Necessary Medical Care." (ECF No. 16, at p. 9). Notably, this statement groups all defendants together and fails to identify the medical care at issue. Moreover, rather than describe the action at issue, it contains a conclusory argument about defendants' join actions, i.e., that they "systematically suppressed" certain test results.

Following this statement of claim, Plaintiff has included a lengthy description of events from February 18, 2021, until June 1, 2023, beginning with "On 2/18//21, neurosurgeon Dr.

Rahmifar examined Plaintiff and observed that Plaintiff's hands twitched whenever his ankles were manipulated." (ECF No. 16 at 9). Thus, rather than incorporate any specific earlier facts, Plaintiff has set forth the entire factual recitation under the "claim," leaving the Court to attempt to determine which of defendants' actions or inactions and which medical treatment are at issue.

Similarly, Plaintiff's "claim 2" states that "Defendants Manhas, Hwang, Samadani, and Zepp Were Deliberately Indifferent When They Falsely Labelled Plaintiff a Drug Addict and Mental Health Patient and Ordered Him Into Mental Health Programs to Circumvent His Need for Surgery." (ECF No. 16 at13). This statement again groups all defendants together. It also makes a conclusory argument, i.e., that defendants falsely labelled Plaintiff a drug addict and coerced him into mental health programs, rather than set forth the specific facts underlying the claim.

This claim too is followed by a chronological narrative from January 26, 2022 until October 13, 2022 of medical appointments, committee meetings, and other incidents. Like the first cause of action, the second cause of action also does not specify what action or inaction each defendant did, why the defendant did that action, and how it resulted in a specific denial of medical care.

Thus, Plaintiff's amended complaint is subject to dismissal because it is an improper shotgun pleading consisting of arguments followed by a chronology of facts, rather than a short and plain statement of Plaintiff's claims as required by Rule 8.

**B. Deliberate Indifference to Serious Medical Needs**

Moreover, to the extent the Court understands Plaintiff's allegations, they do not state a constitutional claim for deliberate indifference to serious medical needs against any defendant.

"Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted).

As to the subjective standard, a prison official or prison medical provider acts with "deliberate indifference…only if the [prison official] knows of and disregards a excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 101, 1057 (9th Cir. 2004) (citation omitted). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how serious the risk." *Gibson*, 290 F.3d at 1188 (citation omitted).

"[T]he indifference to a [prisoner's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this [claim]." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citations omitted). "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. Cal. Dep't. of Corrections and Rehabilitation*, 726 F.3d 1062, 1082 (9th Cir. 2013).

First of all, Plaintiff fails to allege that any of the four defendants was able to provide treatment for his serious medical need yet failed to do so. Plaintiff explains that the treatment

he required was “a decompressive laminectomy with possible fusion.” (ECF No. 16 at 13). However, Plaintiff does not allege that any of the defendants were able to perform this surgery and failed to do so. Nor does Plaintiff allege that any of the defendants made the decision whether to approve that surgery. On the contrary, Plaintiff alleges that “On 12/6/21 the SMART Committee denied Plaintiff’s recommended surgery for the fourth time . . . .” (ECF No. 16 at 10). Yet, Plaintiff has not named any of the members of the SMART committee as defendants.

While Plaintiff argues that actions of the four defendants together “systematically suppressed Plaintiff’s 2021 MRI results,” (ECF No. 16 at 9), this argument fails to state a claim. As described above, Plaintiff does not clearly describe what each defendant did or failed to do that “systematically suppressed” these results. Moreover, Plaintiff himself alleges that notwithstanding defendants’ actions, “multiple neurosurgeons, specifically, Dr. Weibe, Dr. Segan, and Dr. Rahmifar, recommended surgery,” showing that defendants’ actions did not prevent any neurosurgeon from recommending the surgery. (ECF No. 16, at p. 9). Furthermore, by alleging that the SMART Committee denied surgery “for the fourth time,” Plaintiff concedes that the Committee denied the surgery 3 previous times, before defendants’ actions at issue in this amended complaint. Additionally, elsewhere in Plaintiff’s amended complaint, Plaintiff states that the 2021 MRI results were in his KVSP medical file. (ECF No. 16 at12) (“Plaintiff did not learn of his 2021 MRI results until mid-2023, when he purchased his entire 7.5 year KVSP medical file.” (ECF No. 16 at 12). Thus, any medical expert, including those on the SMART Committee, had access to the records that Plaintiff alleges defendants attempted to conceal.

For all these reasons, Plaintiff’s factual allegations, even if true, fail to show that defendants’ actions or inactions prevented Plaintiff from receiving the treatment he required.

Furthermore, Plaintiff has not alleged that any defendant acted with deliberate indifference to a specific medical need. Plaintiff’s amended complaint alleges that at times Defendants failed to accurately describe medical evidence, referred Plaintiff for mental health

care without sufficient cause, pressured Plaintiff to undergo treatment he alleged he did not need or that was not beneficial, and generally, failed to confirm the seriousness of Plaintiff's medical needs. However, these allegations, if true, would indicate a difference of opinion or at most negligence. Plaintiff does not allege facts indicating that any of these medical professionals acted with the intention to deprive Plaintiff of medical care that they believed he required. Rather, Plaintiff's allegations at most show that they acted contrary to what Plaintiff believed he required.

Accordingly, Plaintiff's amended complaint fails to state a claim for deliberate indifference to serious medical needs against any defendant.

## V. CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claim. The Court recommends not allowing leave to amend because Plaintiff was already given leave to amend with the relevant legal standards.

Accordingly, insofar as the Court has screened Plaintiff's first amended complaint notwithstanding the fact it was untimely filed, the Court GRANTS

1. Plaintiff's Motion for 7-10 day extension of time to file a First Amended Complaint. (ECF No. 17).
2. Motion to Excuse Late Filing of First Amended Complaint, Request for Nun Pro Tunc Relief, and Motion of Extension of Time to File First Amended Complaint (ECF No. 18).

Additionally, the Court DENIES:

3. Plaintiff's Request for Leave to Supplement Record within 5-7 days. (ECF No. 19).

Additionally, IT IS RECOMMENDED as follows:

1. This action be dismissed for failure to comply with Rule 8 and failure to state a claim; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty

(30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 22, 2026**

/s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE